**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                        :
KAREN E. TUCKER,                        :
                                        :
               Plaintiff,               :      Civil No. 12-5900 (RBK/AMD)
                                        :
        v.                              :      **OPINION**
                                        :
KATHLEEN SEBELIUS,                      :
Secretary of Health and Human Services, :
                                        :
               Defendant.               :
_____ :

**KUGLER**, United States District Judge:

        This matter comes before the Court on a motion by Defendant Kathleen Sebelius,

Secretary of Health and Human Services ("Defendant"), to dismiss the complaint of Karen E.

Tucker ("Plaintiff") for lack of subject matter jurisdiction and for failure to state a claim.   The

complaint alleges that Defendant failed to process and/or pay thousands of payment requests for

services allegedly rendered to Medicare beneficiaries and seeks payment of all claims submitted.

Plaintiff also alleges violations of her constitutional rights on the part of Defendant, and asks this

Court to vacate a 1998 criminal conviction against her for healthcare fraud.   For the reasons

expressed below, the Court will grant the motion to dismiss.

## I.      BACKGROUND[1]

        Plaintiff, a podiatrist, became one of the subjects of an investigation into potential health

care fraud in Texas in 1996.   Her practice at the time consisted largely of providing podiatric

_____
[1] For a more detailed factual background, see this Court's Opinion in Tucker v. Sebelius, Civ. No. 07-2230, 2010
U.S. Dist LEXIS 69522 (D.N.J. July 12, 2010).

services to nursing home patients.   Plaintiff received payment for these services by submitting

claims to Blue Cross Blue Shield of Texas a/k/a TrailBlazer Health Enterprises, LLC

("TrailBlazer"), a Medicare Part B Carrier.[2]

Plaintiff was subsequently indicted, charged with multiple counts of health care fraud,

and released pending trial.   The indictment alleged that Plaintiff repeatedly billed Medicare for

expensive procedures that she did not perform, that she billed for services to deceased persons

and amputees, and that she exaggerated time spent with patients, billing for more than 24 hours

in one day on at least one occasion.   See Tucker v. United States, No. 99-cv-2599, 2001 WL

1613796 at *2-4 (N.D. Tex. Dec. 13, 2001).   Following her indictment, TrailBlazer informed

Plaintiff that her Medicare payments were suspended pursuant to 42 C.F.R. § 405.371 on the

basis of reliable information that an overpayment existed and a reasonable suspicion of fraud or

misrepresentation.   Plaintiff was told, however, that her Medicare claims would continue to be

processed during the suspension period, and she would be notified about claim determinations.

Plaintiff continued to pursue outstanding Medicare claims, and in connection with her

appeal of unfavorable decisions, Medicare hearing officers requested that she submit certain

documentation that she had not included in her initial submissions.   In December 1997 and

January 1998, Plaintiff received letters from Medicare hearing officers indicating that they had

not received the requested documentation, and that as a consequence a number of her appeals of

unfavorable payment decisions were being dismissed.   However, Plaintiff was informed that she

could reopen the appeals if she provided the required documentation within six months. See

---

[2] Medicare, a federal program governed by the Social Security Act, makes part B benefits available to beneficiaries
who enroll and pay premiums in order to receive supplemental benefits.

Compl. Ex. 24.

During the period of her release, Plaintiff contacted a number of physicians requesting documentation to substantiate her allegations that these physicians had orally authorized her to perform podiatric care on their patients. Some of these physicians interpreted her request as a request for falsification and promptly informed the prosecutor's office. As a result, the Government issued a superceding indictment accusing Plaintiff of obstruction of justice and moved to revoke her bond under the original indictment.

On March 24, 1998, a hearing was held before Magistrate Judge Jeff Kaplan of the Northern District of Texas with respect to the government's motion to revoke Plaintiff's bond. Over the Government's objection, Magistrate Judge Kaplan released Plaintiff subject to certain conditions including that she "avoid all contact with any persons who may be a witness in this case, including any health care providers, doctors, nursing homes, Medicare personnel, and patients." Compl. Ex. 5, p.32.

This order caused a measure of confusion. While the government originally understood it to prevent Plaintiff from continuing to submit requests for payment from Medicare for services allegedly rendered during the period of alleged Medicare fraud, Plaintiff understood it to mean that she could not personally contact Medicare, but that she could nonetheless attempt to get paid by Medicare for legitimate services rendered in order to pay for her criminal defense. As a consequence, Plaintiff hired a Florida Firm, Cooper Management Group, Inc., to file claims on her behalf.

On May 13, 1998, after additional hearings before Judge Kaplan had taken place, Chief District Judge Jerry Buchmeyer held a hearing on an unrelated matter. At the hearing, Chief

Judge Buchmeyer asked Plaintiff's counsel and the Assistant United States Attorney what Judge Kaplan did with respect to Plaintiff's ability to bill Medicare and thereby earn money to pay for her defense. Plaintiff's counsel, F. Lee Bailey responded: "He lifted any restrictions against her practicing medicine. . . . And he lifted any restrictions against her putting in claims." Compl., Ex. 22, p.4-5. Mr. Bailey was concerned that this was a meaningless remedy because Medicare would not pay any claims submitted by Plaintiff until after the resolution of the criminal prosecution. The Assistant United States Attorney agreed that Magistrate Judge Kaplan had lifted the restriction on Plaintiff filing claims with Medicare. Id. at Ex. 22, p.7-8.

On December 18, 1998, Plaintiff pleaded guilty to one violation of heath care fraud. Specifically, she pleaded guilty to providing podiatric services to Zala Farley without obtaining a specific recommendation and approval for the services from the attending physician. On March 5, 1999, Plaintiff was sentenced to six months of home confinement, three years of probation, and was required to pay $26,402 in restitution to the United States.

Following her sentencing, Plaintiff began the process of attempting to get paid the amounts she believed she was owed by Medicare, but was precluded from recovering during the pendency of her criminal prosecution. On July 29, 1999, Plaintiff contacted Medicare requesting information as to how to appeal claims previously denied at the fair hearing and administrative law judge levels. In a letter dated September 13, 1999, James Alexander, M.D., the Texas Medicare Director, stated that he had asked William Young of Benefits Integrity to give him information regarding the status of the federal litigation issues in Plaintiff's case, and that Mr. Young had stated that she was "allowed to appeal [her] claims at the appropriate level." Compl. Ex. 19.

On September 13, 1999, Debra Brigham, a Medicare Provider Education Specialist at Trailblazer, communicated with Plaintiff several times. In a letter dated November 2, 1999, Ms. Brigham stated that Medicare claims could only be accepted for the last quarter of 1997 and all of 1998 and 1999. Apparently, this statement was made pursuant to 42 C.F.R. § 424.44, which requires that claims be submitted within a certain period of time after services are rendered. Ms. Brigham also noted that several of Plaintiff's fair hearing requests had been dismissed, and that the time limit had expired for re-opening the hearing requests; thus, TrailBlazer was unable to forward these claims to an administrative law judge.

In a fax to Dr. Alexander dated December 13, 1999, Plaintiff stated that Carol Alkek, Manager of the Fair Hearings Department, had called and stated that she had no intention of reviewing the approximately 7000 claims filed for a fair hearing because she could not find the data on the computer system and the matter was untimely. In a letter to Debra Brigham on the same day, Plaintiff requested that her approximately 1500 outstanding claims subsequent to May 1996 be allowed to be submitted, because her files had been seized in May 1996 and returned in August 1999. Plaintiff also requested the opportunity to resubmit claims that had been submitted in 1994 and 1995. See Compl. Ex. 11.

In April 2003, an attorney for Plaintiff sent two letters to Center for Medicare & Medicaid Services ("CMS"), Region VI, requesting that CMS assist her in securing payment for outstanding claims from TrailBlazer. On May 12, 2003, Stephanie Gammon, Manager of the Program Integrity Branch in CMS, Region VI, requested that Plaintiff provide information on the outstanding claims in dispute, after which CMS would ask the Medicare carrier to research the claims and provide the final status of the claims.

By letter dated March 29, 2004, which was sent to Plaintiff's attorney, Ms. Gammon noted that in January 2004, CMS had received three computer disks with claims information. Ms. Gammon stated that, considering the large number of claims involved, CMS had asked TrailBlazer to randomly select a claim for review from each of the eighteen facilities listed in the submitted information. The review indicated that several of the claims had been disallowed for lack of medical necessity, with first level appeals affirming the denials, and that the other claims were disallowed for reasons including lack of medical necessity, invalid procedure code, and invalid date of service listed. Ms. Gammon noted that the findings indicated that TrailBlazer processed and adjudicated the claims according to Medicare rules and regulations, that Plaintiff was provided with appeal rights, and that since the claims were processed for payment in 1996 through 1998, the timeliness for appealing the initial claim payment determination had expired. In addition, Ms. Gammon stated that TrailBlazer records indicate that all cases submitted for appeals by Plaintiff have been adjudicated and closed accordingly through the Fair Hearing Department.

By letter dated June 2, 2006, Susan McLaughlin, Acting Branch Manager of the Program Integrity Branch, CMS Region VI, responded to a letter from Mary Mitchell, a representative for Plaintiff. Responding to the allegation that Plaintiff never received an in-person fair hearing on numerous claims, and that no final decisions were rendered with respect to these claims, Ms. McLaughlin noted that correspondence to Plaintiff from the hearing officers clearly establish that her appeals were dismissed because requested documentation from Plaintiff was not provided. The hearing officers stated that the dismissals could be have been vacated if Plaintiff resubmitted the requested documentation within six months of the dismissals. Ms. McLaughlin stated that

TrailBlazer had selected a sample of one appeal from each hearing officer involved in Plaintiff's appeals, consisting of a total of forty beneficiaries, and that no additional medical records submitted by Plaintiff were found. Additional review of files also indicated that there was no evidence that any documentation was submitted within six months of any of the dismissals. Since no additional medical records were submitted by Plaintiff, Ms. McLaughlin noted that the dismissals of the appeals were final, and constituted the final decisions of the Secretary.

Ms. McLaughlin also addressed the September 13, 1999 letter from Dr. Alexander to Plaintiff. Ms. McLaughlin noted that Dr. Alexander's letter afforded Plaintiff the opportunity to have someone from the Provider Education area of TrailBlazer provide additional information on appealing denied claims. However, according to Ms. McLaughlin, the September 13, 1999 letter did not make any claims about submitting untimely documentation. Plaintiff's further attempts to reestablish her administrative appeals were rejected on the ground that Plaintiff had not timely filed appeals of the unfavorable claim decisions.

On May 9, 2007, Plaintiff filed a complaint in this Court requesting payment of all claims submitted, with interest and costs. That complaint was dismissed by this Court for lack of subject matter jurisdiction pursuant to an Order and Opinion, both dated July 12, 2010. See Tucker v. Sebelius, No. 07-2230, 2010 U.S. Dist. LEXIS 69522 (D.N.J. July 12, 2010). This Court determined that jurisdiction for judicial review did not exist under 42 U.S.C. § 405(g) because Plaintiff had not exhausted her administrative remedies, and because no grounds existed for permitting a waiver of the exhaustion requirement. Id. at *28-29. Plaintiff moved for reconsideration, and her motion was denied by this Court pursuant to an Order and Opinion dated July 25, 2011. See Tucker v. Sebelius, No. 07-2230, 2011 U.S. Dist LEXIS 81024

(D.N.J. July 25, 2011). Plaintiff next appealed to the Third Circuit, which affirmed the dismissal of her complaint in an opinion dated May 26, 2012. See Tucker v. Sec'y of Health and Human Servs., 487 F. App'x 52 (3d Cir. 2012) (cert denied, 133 S. Ct. 952 (2013)).

Following the Third Circuit's decision in her previous action, Plaintiff filed this complaint on September 20, 2012. In the current complaint, she seeks payment for the same Medicare claims that she sought to recover for in her previous complaint. Compl. pp. 27-28. Plaintiff also asserts jurisdiction based upon a host of federal statutes and alleged constitutional violations. She alleges that jurisdiction exists under "Section ADMINISTRATIVE PROCEDURE ACT 5 U.S.C. § 701-708, Tucker Act, 28 U.S.C. § 1491, *Bivens* Claim - Claims Based on 42 USC § 1985(3) and 1986, FTCA Claim 28 USC § 1346(b) (1), Federal Rules of Evidence, Rule 409, Statutes 8 USC 371; 1341; 1956 (a) (1) (A) (i) and 2; 1957; Title18, United States Code, section 1341 and 1347; Civil Fraud Injunction and Receivership Statute 18 U.S.C. § 1345, 42 C.F.R. § 405.801 (a), 42 C.F.R. § 405.832 (b) (e) of the Social Security Act, as amended, 42 C.F.R. § 405.370, 42 C.F.R. 405.375 (c), 42 C.F.R. § 405.371, 42 C.F.R. § 424.44, 42 U.S.C. § 405 (e) (g)." Compl. p.1 (quoted verbatim). She also claims that her Fifth, Sixth, Seventh and Fourteenth Amendment rights were violated by Defendant. Id. at pp. 2-3, 10. Defendant now moves to dismiss the complaint, arguing that Plaintiff is seeking to re-litigate the same causes of action as in her prior complaint. Defendant asks for dismissal under the doctrines of res judicata and collateral estoppel, as well as under Rule 12(b)(1) and Rule 12(b)(6).

## II.    STANDARD

### A.  Subject Matter Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint or portions of a complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may be brought at any time and may either (1) "attack the complaint on its face" or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In a facial attack, all allegations in the complaint are considered true. Id. In a factual attack, the court does not presume the truth of the allegations and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. In such a case, "the court can consider affidavits attached to the moving papers or even require such affidavits to be submitted." New Hope Books, Inc. v. Farmer, 82 F. Supp. 2d 321, 324 (D.N.J. Jan. 13, 2000) (citing Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1281 n.4 (3d Cir. 1993)). Furthermore, the plaintiff has the burden of proving that the court has subject matter jurisdiction. Mortensen, 549 F.2d at 891. If a court lacks subject matter jurisdiction, it must dismiss the case without prejudice. In re Orthopedic "Bone Screw" Prods. Liab. Litig., 132 F.3d 152, 155-56 (3d Cir. 1997).

**B. Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a

complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

## III. DISCUSSION

### A. Res Judicata and Collateral Estoppel

Defendant argues that Plaintiff's claims should be dismissed because of the preclusive effect of the decision by this Court dismissing her prior complaint. Def. Br. at 11-12. As Defendant recognizes, a final judgment on the merits is a prerequisite to the application of either res judicata or collateral estoppel. See id. (citing Day v. United States Dep't of Justice, 2007 WL 1321208 (D.N.J. May 2, 2007)). However, Defendant fails to acknowledge that Plaintiff's prior complaint was dismissed for lack of subject matter jurisdiction. See Tucker v. Sebelius,

2010 U.S. Dist. LEXIS 69522 at *13.   A dismissal of an action for lack of subject matter jurisdiction is not a decision on the merits.   Figueroa v. Buccaneer Hotel, Inc., 188 F.3d 172, 182 (3d Cir. 1999).   Thus, the prior dismissal of Plaintiff's claim was not "on the merits," and this court may not apply res judicata or collateral estoppel.

### B.  Bivens and § 1985/1986 Claims

Defendant argues that Plaintiff's claim under the authority of Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), is barred by the doctrine of sovereign immunity.   Bivens actions may be brought against a federal official who deprives a plaintiff of a constitutional or other federal right, but may only be brought against officials acting in their individual capacities.   Otherwise, "[a] Bivens suit 'against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity."   Brazelton v. Holt, 462 F. App'x 143, 146 (3d Cir. 2012), (citing Consejo de Desarrollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007)).   An action against the United States would be barred because the United States has not waived sovereign immunity in connection with civil rights claims.   See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) (citing Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 484-86 (1994)).

Here, Plaintiff appears to have filed this suit against Secretary Sebelius in her official capacity as Secretary of the Department of Health and Human Services ("DHHS").   Plaintiff has pointed to no specific action in her complaint that Secretary Sebelius personally performed that deprived Plaintiff of a federal right.   Rather, the closest that her theory seems to come is alleging respondeat superior liability, in that the Secretary "failed to supervise her agents."   Compl. p.

14.  Respondeat superior, however, is not a form of relief available under <u>Bivens</u>.   <u>Huberty v. U.S. Ambassador to Costa Rica</u>, 316 F. App'x 120, 122 (3d Cir. 2008).

Plaintiff argues that the United States has waived its sovereign immunity, but she seems to misunderstand the concept of waiver of sovereign immunity.   She repeatedly argues that sovereign immunity has been waived by virtue of the commission of alleged bad acts.   <u>See</u> Pl. Opp'n at 7 ("Plaintiff's new exculpatory evidence shows how the Defendant(s) 'waive' sovereign immunity by causing Dr. Tucker to suffer irreparable harm . . . ."); <u>see also</u> <u>id.</u> at 9, 37. This argument fails because a valid waiver of sovereign immunity must be "explicit."   <u>Huberty</u>, 316 F. App'x at 122.   There is no authority to support the notion that the Government may waive sovereign immunity by committing the very bad acts that sovereign immunity operates to bar.

Similar to the <u>Bivens</u> claim, 42 U.S.C. § 1985(3) "does not waive the United States' sovereign immunity."   <u>White v. United States</u>, 791 F. Supp. 2d 156, 161 (D.C. Cir. 2011) (citations omitted); <u>see also</u> <u>Meyer</u>, 510 U.S. at 475.   The same rule applies to allegations of violations of 42 U.S.C. § 1986.   <u>Jachetta v. United States</u>, 653 F.3d 898, 904 (9th Cir. 2011). Therefore, Plaintiff has not stated a claim under <u>Bivens</u>, §1985, or §1986 because the doctrine of sovereign immunity applies and has not been waived.   Because no plausible claim to relief exists on the face of the complaint as to these causes of action, they must be dismissed.

## C.      Constitutional and Statutory Claims

Plaintiff asserts that jurisdiction exists under a host of federal statutes and constitutional provisions.   These alleged bases for jurisdiction appear to be an attempt by Plaintiff to avoid

asserting jurisdiction based upon the Social Security Act,[3] which is discussed in part D infra. This Court previously held that jurisdiction did not exist over Plaintiff's claim under § 405(g) of the Social Security Act.   Because § 405(g) typically is the basis for a district court's jurisdiction over a claim for Medicare payments, a brief background is warranted.

A district court has jurisdiction over an appeal taken from "a final decision" of the Secretary made after a hearing.[4]   42 U.S.C. § 405(g); see 42 U.S.C. § 1395ff(b)(1) (judicial review of Secretary of Health and Human Services final decisions governed by 42 U.S.C. § 405(g)).   At its core, this jurisdictional standard consists of two elements, namely (1) the non-waivable requirement that the claim have been presented to the Secretary; and (2) the waivable requirement that the claimant exhaust administrative remedies.[5]   Matthews v. Eldridge, 424 U.S. 319, 328 (1976); Heckler v. Day, 467 U.S. 104, 111 n.14 (1984).

This Court determined in its July 12, 2010 opinion that it did not have subject matter jurisdiction to hear Plaintiff's appeal of the Secretary's decision under § 405(g).   Tucker v. Sebelius, 2010 U.S. Dist. LEXIS 69522 at *13.   The claim was found to have been "presented to the Secretary," but Plaintiff was not found to have exhausted all administrative remedies, and no exception to the exhaustion requirement was found to exist.   Id. at *28-29.

---

[3] Medicare is governed by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg.

[4]   42 U.S.C. § 405(g) provides, in pertinent part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

[5]   The standard also contains at least two other conditions: (1) that the action be filed within sixty days after notice of decision (or within such time as the Secretary may allow); and (2) that the action be filed in the appropriate court. The first of these conditions articulates a statute of limitations; whereas, the second specifies venue.   Both are waivable by the parties.   See Matthews v. Eldridge, 424 U.S. 319, 328 n.9 (1976).

Section 405(h) of the Social Security Act channels virtually all legal attacks against a decision of the Secretary through the mechanism provided for in § 405(g).   42 U.S.C. § 405(h).[6] That section indicates that "no action . . . shall be brought under section 1331 or 1346 of title 28 of the United States Code, to recover on any claim arising under this title."   Id.   The Supreme Court has recognized that although this channeling may come "at a price" to litigants at times, "paying this price may seem justified.   In any event, such was the judgment of Congress . . . ." Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 13 (2000).

Plaintiff nonetheless asserts a number of alternative bases of federal jurisdiction.   Many of these claims to jurisdiction are barred by 42 U.S.C. § 405(h) as long as they "arise under" the Social Security Act.   For example, Plaintiff's claims for alleged constitutional violations would presumably be grounded in 28 U.S.C. § 1331, which allows for jurisdiction "of all civil actions arising under the Constitution, law, or treaties of the United States."   Constitutional claims arising out of Medicare claims must therefore be "channeled" through the procedure described in § 405(g).   Weinberger v. Salfi, 422 U.S. 749, 762 (1975).   Similarly, claims "arising under" the Social Security Act are explicitly restricted from being brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), by § 405(h).   Plaintiff's attempt to ground jurisdiction in the Administrative Procedure Act, 5 U.S.C. §§701-708, is also barred by § 405(h).   See Heckler v. Ringer, 466 U.S. 602, 614 (1984).

The Court finds that all of Plaintiff's claims for medical services do "arise under" the Social Security Act, in that the relief that Plaintiff seeks is the same as in her prior suit—an award for a sum that she believes was wrongfully withheld or not paid by the Secretary for

---

[6] Section 405(h) is made applicable to the Social Security Act by 42 U.S.C. § 1395ii.

treatment of patients in her podiatric practice during the 1990s. Compl. p. 28. When benefits

are sought under the Social Security Act, as here, the action "arises under" the Act.

Weinberger, 422 U.S. at 761. Even if a claim "arises under" both the Constitution and the

Social Security Act, § 405(h) "precludes resort to federal-question jurisdiction for the

adjudication of . . . constitutional contentions." Id. As a result, jurisdiction cannot exist under

28 U.S.C. § 1331, 28 U.S.C. § 1346(b), or the Administrative Procedure Act due to the

"channeling" function of § 405(h).[7]

    Plaintiff's claim to jurisdiction based upon the federal criminal statutes in title 18 of the

United States Code must also fail. The criminal code provisions she cites, 18 U.S.C. § 1341, 18

U.S.C. § 1345, and 18 U.S.C. § 1347, may only be prosecuted by the government, not against it.

See Haydu v. United States, 2013 WL 665066 at *10 (N.D.N.Y. Jan. 29, 2013). Criminal

statutes generally provide no basis for civil liability. Aldabe v. Aldabe, 616 F.2d 1089, 1092

(9th Cir. 1980). Further, Plaintiff cannot show that the Government has waived sovereign

immunity, as discussed in Part III.B., with respect to these alleged causes of action.

    Plaintiff's allegation of jurisdiction under 28 U.S.C. § 1491 also fails. This statute, known

as the "Tucker Act," confers jurisdiction upon the Court of Federal Claims for certain cases. 28

U.S.C. § 1491(a)(1). It also confers jurisdiction upon district courts to hear actions related to

procurements and proposed or awarded federal contracts. 28 U.S.C. § 1491(b)(1). Neither of

these situations applies to Plaintiff's claims.

    It is unclear what basis for jurisdiction, if any, Plaintiff seeks to establish by citing

---

[7] As Defendant correctly points out, the Administrative Procedure Act does not provide a separate basis for
jurisdiction in any event. See Wilkens v. United States, Civ. No. 03-1837, 2004 WL 1198138, at *3 (D.N.J. Feb.
19, 2004)

portions of title 8 of the United States Code.   See Compl. p. 1.   The statutes cited by Plaintiff in title 8 do not appear in the United States Code as it currently is constituted.   Although Defendant does not address these, the Court does not see any basis for jurisdiction over this dispute based on any material in title 8.[8]   Plaintiff also claims this Court has jurisdiction under "Federal Rules of Evidence, Rule 409."   Compl. p. 1.   The Federal Rules of Evidence do not confer jurisdiction or create an independent cause of action.   See 28 U.S.C. § 2072(b).

The remaining claims made by Plaintiff fall within the Social Security Act and judicial review of these claims is channeled through 42 U.S.C. § 405(g), as explained above, and will be discussed next.

### D.  Review Pursuant to § 405(g)

Because all the other channels through which Plaintiff seeks to recover her Medicare billings fail, as explained above, her claims must be viable under the judicial review procedure in 42 U.S.C. § 405(g) if they may proceed at all.   For the reasons explained in this Court's Opinion dismissing Plaintiff's previous complaint, this Court did not have jurisdiction over her claims in that case due to her failure to meet the exhaustion requirement and the lack of a valid exception. See Tucker v. Sebelius, 2010 U.S. Dist. LEXIS 69522, at *22, 28-29.   Plaintiff seems to take the position that because she has now raised constitutional issues, this case should come out differently than her previous suit as to jurisdiction.   Pl. Opp'n at 43.   Because Defendant argues that the alleged constitutional violations are merely the same claims advanced by plaintiff in new

---

[8] Title 8 of the United States Code deals with the topic of Aliens and Nationality.   If Plaintiff means to refer to 18 U.S.C. §§ 371, 1341, 1956 and 1957, these do not create a private right of action in any event.   See Jones v. Lockett, 2009 WL 2232812 at *8 (W.D. Pa. July 23, 2009); Barrett v. City of Allentown, 152 F.R.D. 50, 55 (E.D. Pa. 1993).

dressing, this court must review the implications of alleged constitutional violations on the

exhaustion requirement under § 405(g) and then determine whether any such conduct alleged in

Plaintiff's complaint waives the exhaustion requirement.[9]  See Def. Br. at 21.

In its prior opinion, this Court noted that "[t]he Third Circuit has found court-based

waiver in a situation where the claimant raised constitutional issues . . . ."  Tucker v. Sebelius,

2010 U.S. Dist. LEXIS 69522 at *19.  In such a case "the federal court is more qualified to

address constitutional questions than the agency."  Id.  Similarly, the Third Circuit, when

hearing Plaintiff's appeal, observed that Plaintiff had raised no constitutional issues, and noted

that one of the instances where exhaustion could be waived was where the claimant presented a

"colorable constitutional argument."  Tucker v. Sec'y of Health and Human Servs., 487 F.

App'x at 56.  In order to meet this exception, a "plaintiff must (1) raise a colorable

constitutional claim collateral to his substantive claim of entitlement; (2) show that he would be

irreparably harmed by enforcement of the exhaustion requirement; and (3) show that the

purposes of exhaustion would not be served by requiring further administrative procedures."

Hussain v. Sec'y of Health and Human Res., 748 F. Supp. 277 (D.N.J. 1990) (citing Lavapies v.

Bowen, 883 F.2d 465, 467 (6th Cir. 1989).  The rationale of waiving the exhaustion requirement

where constitutional challenges are set forth is because "if the legal issue is constitutional . . . the

administrative agency cannot decide that issue."  Liberty Alliance of the Blind v. Califano, 568

---

[9] It is undisputed that Plaintiff did not pursue any of her claims to exhaustion of her administrative remedies.  The administrative review process of unfavorable decisions of Medicare Part B carriers is set-out in 42 C.F.R. § 405.801. The Medicare carrier makes an initial determination when a request for payment is submitted. 42 C.F.R. § 405.801(a).  Dissatisfied claimants may request a carrier-level review of the claim.  Id.  If unsatisfied with the result, claimants may then request a carrier hearing, also known as a fair hearing.  Id.  Further review may be obtained by way of a hearing before an administrative law judge.  Id.  Finally, a dissatisfied claimant may request review by the Departmental Appeals Board.  Id.

F.2d 333, 345 (3d Cir. 1977).

A colorable constitutional claim may exist where it is the agency's actions that deprive a claimant of his constitutional rights.   For example, where the Social Security Agency failed, in violation of its own regulations, to send a notice of denial of social security benefits to the attorney for a developmentally disabled claimant, and then denied the claimant's request for a hearing because he did not file an appeal within 60 days of the denial, the Third Circuit held that a constitutional question had been raised.   Penner v. Schweiker, 701 F.2d 256, 258-60 (3d Cir. 1983).   The court held that the claimant had raised "a colorable constitutional claim that the Secretary violated his due process rights by failing to provide him with adequate notice of his right to request a hearing."   Id. at 257.

Here, Plaintiff claims that Defendant violated her Fifth, Sixth, Seventh, and Fourteenth Amendment rights.   However, reading the complaint in the light most favorable to the pro se Plaintiff, the Court finds no possible basis for a violation of her Sixth, Seventh, or Fourteenth Amendment rights by Defendant.[10]   The sole plausible constitutional claim asserted by Plaintiff appears to be a claim of a violation of the Due Process clause of the Fifth Amendment on the part of Defendant.   The concept of due process is mentioned several times by Plaintiff in her complaint.   See Compl. pp. 2-3, 10, 14.   Procedural due process rights are implicated when a person is deprived of a liberty or property interest without a meaningful opportunity to be heard.

---

[10] The Sixth Amendment guarantees the right to a fair trial for criminal defendants.   U.S. Const. amend. VI. Defendant did not try Plaintiff criminally, and in any event her procedural rights at trial have nothing to do with her claims under § 405(g) for Medicare payments.   The Seventh Amendment governs civil suits at common law.   U.S. Const. amend. VII.   It appears that Plaintiff may allege that her Sixth Amendment rights were violated in the court where her criminal proceedings took place, but Plaintiff makes no plausible connection between the Defendant here and her Sixth or Seventh Amendment rights.   The Fourteenth Amendment can only be violated by state actors, and not by a federal government entity such as Defendant.   See MacNamara v. Hess, 67 F. App'x 139, 140 n.1 (3d Cir. 2003).

Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998).

Although this Court's prior opinion did not address due process, because it was not raised by Plaintiff in her prior complaint, a close reading of this Court's July 12, 2010 opinion shows a careful examination of whether Plaintiff in fact had a meaningful opportunity to be heard at the administrative level. As indicated there, "the primary and overwhelming thrust of Dr. Tucker's arguments on appeal go to the idea that she should not be penalized for failing to submit documentation to Medicare when she was prevented from doing so by court order." Tucker v. Sebelius, 2010 U.S. Dist. LEXIS 69522 at *23. She argued, essentially, that "the exhaustion requirement should be waived because requiring her to exhaust her administrative remedies would have potentially subjected her to further superceding indictments and perhaps the loss of freedom." Id. Plaintiff took issue with an order issued by Magistrate Judge Kaplan that arguably prevented her from submitting claims to Medicare from March 24, 1998 through May 13, 1998. Id. at *24. This court found that she could have, but did not, submit claims and documentation to Medicare both before and after this order was in effect. Id. at *24-26. As noted in the prior opinion, it appears that Plaintiff did not contact Medicare and begin submitting claims and documentation under approximately July, 1999. Id. at *27. Although not couched in the language of due process, this finding was calculated to determine whether Plaintiff had a "meaningful opportunity to be heard" at the administrative level.

Plaintiff also asserted in her previous case that she was prevented from having a hearing on her billing claims because the Government seized her records on May 3, 1996 and did not return them until August 4, 1999. However, this Court found that Plaintiff had her records available and actually employed a third party to submit claims to Medicare for her during this

period.   Tucker v. Sebelius, 2010 U.S. Dist. LEXIS at \*22 n.7.   She claimed that she was

prevented from exercising her right to bring documentation to an in-person hearing, and

complained of an alleged failure to send final decision letters indicating a right to appeal.   Id. at

\*11-12.   However, this Court found that the apparent reason for denial of Plaintiff's claims was

a failure on her part to submit documentation.   Id. at \*28.   These findings too, were essentially

a determination of whether Plaintiff had been deprived of an opportunity to be heard at the

administrative level.[11]

Plaintiff now reiterates the same complaints about processes that DHHS used to

adjudicate her claims, but now calls them constitutional violations.   For example, Plaintiff

presently reiterates her issue with Judge Kaplan's order of March 24, 1998.   Compl. p. 10.   She

also argues, again, that she was prevented from having a hearing on her billing claims because

the Government seized her records on May 3, 1996 and did not return them until August 4, 1999.

Id. at 15-16.   She resurfaces the claim that she was prevented from exercising her right to bring

documentation to an in-person hearing, id. at 14, and again points to an alleged failure by

Defendant to send final determination letters indicating a right to appeal.   Id. at 15.

Dressing these allegations up as "due process" violations is not a talisman that suddenly

invokes a waiver of the exhaustion requirement.   See Nicosia v. Barnhart, 160 F. App'x 186,

188 (3d Cir. 2005).   Courts have recognized that "a constitutional claim is not colorable 'if it

---

[11]  To the extent that Plaintiff may believe that due process was violated because she never received a hearing of an in-person nature, the Court observes that this is not required by due process.   When written submissions are an adequate method of resolving a dispute, due process generally does not require an in-person hearing.   See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985) (observing that "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."); Pageus v. United States Dept. of Educ., Civ. No. 07-3167, 2010 WL 731590 at \*4 (N.D. Ga. Feb 25, 2010) ("Due process does not require . . . an oral hearing.").

clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . .

is wholly insubstantial or frivolous.'"   Adamik v. Astrue, Civ. No. 11-1429, 2012 WL 3127155

at *2 (W.D. Pa. July 31, 2012) (citing Banks v. Chater, 949 F. Supp. 264, 266 (D.N.J. 1996).

Plaintiff does not present a "colorable" due process claim for the same reasons indicated in this

Court's opinion dismissing her prior complaint.   It is not necessary to repeat the analysis of

every issue again here.   It is sufficient to say that characterizing her arguments as

"constitutional" or "due process" violations does not change the result.   For the reasons

expressed here and in the prior opinion, the Court still does not agree that Plaintiff was prevented

from having a fair opportunity to present her claims administratively.

The Court has examined the complaint for any allegations implicating constitutional

rights that were missing from her prior complaint, but has found none.   She refers to a court

order of October 8, 1997 that she claims prevented her from filing Medicare claims, however no

such order has been produced.   Compl. p. 14.   It appears that Plaintiff may actually be referring

to the indictment, dated October 8, 1997, which would not have prevented Plaintiff from filing

legitimate Medicare claims.   Compl. Ex. 51.   She also claims that Defendant should have held

"all Plaintiff's claims in abeyance during pre-trial release and post-conviction after pendency of

all civil and criminal litigation."   Compl. pp. 1-2.   The Court does not observe any reason why

failing to hold the claims in abeyance would violate any of Plaintiff's constitutional rights, even

if that is something she would have preferred.   She also complains that Defendant and other

Government agents "entrapped" her, evidently by inducing her to file Medicare claims so that

the prosecution in her criminal case could then use her claim filings to charge her with further

crimes.   Compl. p. 9.   Entrapment does not entail a constitutional violation, and in any event,

Plaintiff does not indicate why this would have prevented her from filing legitimate Medicare claims.  See Jones v. Bombeck, 375 F.2d 737 (3d Cir. 1967) (Entrapment may be a proper defense in a criminal action, but does not entail a constitutional violation).

For the reasons expressed here and in the prior opinion, Plaintiff did have an opportunity to pursue her administrative remedies, and thus was not deprived of due process.  Rather, the Court believes, as it did before, that the apparent reason for denial of Plaintiff's claims is a failure to submit documentation.[12]  Plaintiff, in her current suit, has still not produced any indication that any requested documentation was in fact filed with six months of the agency dismissals, or that she was not made aware of the documentation requests.  Due process rights are not implicated merely because Plaintiff does not agree with the process Defendant used to review her claims.

The Court is thus not convinced that Plaintiff has a "colorable constitutional argument" that merits an excusal of the exhaustion requirements.  Unlike the claimant in Penner—a developmentally disabled individual who lost his opportunity to appeal an agency finding because the agency did not copy his attorney on the denial letter—Plaintiff has pointed to no conduct by Secretary Sebelius or her agents that caused Plaintiff to be unable to exhaust her administrative appeals, thus implicating due process.  Penner, 701 F.2d at 258.  Plaintiff has made no showing that she was unable to proceed with her appeals during any time period other

---

[12] For example, a letter from the Division of Medicare Financial Management, Region VI states that the reason for the dismissal of Plaintiff's appeals is that "the requested documentation from Dr. Tucker was not provided.  The hearing officers stated that the dismissals could be vacated if Dr. Tucker resubmitted the requested documentation within 6 months of the dismissals."  It went on to say that "Trailblazer selected a sample of one appeal from each hearing officer involved in Dr. Tucker's appeals, consisting of a total of 40 beneficiary files.  No additional medical records submitted by Dr. Tucker were found. . . . [T]here is no evidence that any documentation was submitted within 6 months of any of the dismissals."  Compl. Ex. 36.

than the six weeks that the magistrate's order was in effect.

Additionally, Plaintiff has not shown that she would be "irreparably harmed" by pursuing her administrative remedies.   Hussain, 748 F. Supp. at 279.   Because "irreparable harm" was also an element of the waiver doctrine Plaintiff previously sought to apply, this court specifically found that Plaintiff would not have been "irreparably harmed" by exhausting administrative remedies when she filed her previous complaint.   Tucker v. Sebelius, 2010 U.S. Dist. LEXIS 69522 at *28-29.   Although Plaintiff recites the term "irreparable harm" in her complaint, she has not set forth any new factual allegations that show that she would have in fact suffered such harm. See Compl. p. 14.

Further, Plaintiff has not shown that any issue existed that an administrative agency could not decide.   The reason that the exhaustion requirement may be waived when a plaintiff has "a colorable constitutional argument" is because an administrative agency cannot decide a constitutional issue.   Liberty Alliance, 568 F.2d at 345-46.   However, it appears that Plaintiff had no constitutional issue to present at the time her administrative appeals were pending.   It was not until her first complaint in district court was dismissed, and the dismissal was upheld on appeal, that Plaintiff finally claimed that her constitutional rights had been violated.   Because there is no reason to believe that the administrative agency would have been called upon to decide any constitutional issue, the entire rationale for waiver fails.   Because the exhaustion requirement is a jurisdictional issue, Plaintiff's claim for review of the Secretary's decision under 42 U.S.C. § 405(g) will be dismissed for lack of subject matter jurisdiction.

E.     Plaintiff's Guilty Plea

Plaintiff also seeks an order vacating her "guilty plea for healthcare fraud under 18

U.S.C. § 1347." Compl. p. 28. She "argues for habeas relief because new evidence shows that her conviction is factually incorrect." Pl. Opp'n at 29.[13] In her opposition brief, she repeatedly weaves in allegations of ineffective assistance of her defense counsel, F. Lee Bailey, prosecutorial misconduct by withholding exculpatory materials in violation of Brady v. Maryland, 373 U.S. 83 (1963), and asks for an "evidentiary hearing." See, e.g., Pl. Opp'n at 4, 6, 12, 23-25. This Court clearly has no authority to vacate Plaintiff's 1998 guilty plea in the Northern District of Texas. Plaintiff already sought to vacate her guilty plea in the court where she was sentenced. See Tucker v. United States, 2001 WL 1613796 at *1, (N.D. Tex. Dec 13, 2001).[14] Pursuant to her guilty plea, Plaintiff waived her right to appeal or collaterally attack her conviction, except on the ground of ineffective assistance of counsel. Id. at *3. This court has no appellate jurisdiction over either Plaintiff's conviction or her claim for post-conviction relief. 28 U.S.C. § 1291. It appears that Plaintiff seeks an evidentiary hearing under 28 U.S.C. § 2255(b). Because she already filed a § 2255 claim, she cannot file a second one without authorization from a court of appeals.[15] 18 U.S.C. § 2244; see also In re Adderly, 522 F.

[13] The Court finds it curious that Plaintiff appears to use the majority of her forty-five page, single-spaced brief opposing this motion to argue that her criminal conviction should be vacated, considering that her complaint is postured as a suit for a review of claim decisions by the Secretary of Health and Human Services. The Court also notes that Plaintiff's brief far exceeds the page limit for printed briefs of 40 pages of double-spaced text. L. Civ. R. 7.2. The font size also appears significant smaller than what is required by the local rules. L. Civ. R. 7.2(d).

[14] It appears that Plaintiff is also concurrently attempting to have her conviction and sentence vacated under a successive 28 U.S.C. § 2255 petition in the Northern District of Texas. See Tucker v. United States, Civ. No. 12-5229, 2012 WL 6877180 (N.D. Tex. Dec. 27, 2012).

[15] If there is some other authority aside from habeas corpus under which Plaintiff believes that this Court may vacate her conviction, it is not clear from her complaint or brief. Plaintiff cites habeas corpus authorities in her complaint, appearing to claim that her conviction should be vacated because she has evidence that she was innocent of the charges she pled guilty to. Compl. pp. 6-7. Assuming that Plaintiff received a copy of the December 27, 2012 Opinion of Judge Horan of the Northern District of Texas, Plaintiff should know that a district court cannot consider a repeat § 2255 motion without authorization from an appeals court. Further, although Plaintiff is proceeding pro se, this Court finds it difficult to believe that Plaintiff is unaware that she is not entitled to seek to vacate the same criminal conviction simultaneously in two different federal district courts.

App'x 151, 153 (3d Cir. 2013).

IV.     **CONCLUSION**

For the foregoing reasons, the Secretary's motion to dismiss will be **GRANTED**.   An

appropriate order shall enter.

Dated: 11/15/2013                                                     /s/ Robert B. Kugler
                                                                     ROBERT B. KUGLER
                                                                     United States District Judge